UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:    _____
DATE FILED: August 30, 2012
```

-------------------------------------------------- x

BERNARD THOMAS,                          :
                                          :
                    Plaintiff,            :          ORDER ADOPTING R&R
                                          :
        - against -                       :          10 Civ. 2401 (PAC) (MHD)
                                          :
WILLIAM CONNOLLY, et al.,                 :
                                          :
                    Defendants.           :
-------------------------------------------------- x

HONORABLE PAUL A. CROTTY, United States District Judge:

      Pro se plaintiff Bernard Thomas brings this 42 U.S.C. § 1983 ("Section 1983") action against eight employees of the Fishkill Correctional Facility ("Fishkill") and an official of the New York State Department of Correctional Services ("DOCS"). Thomas sues Defendants in their individual and official capacities, asserting that certain Defendants (1) denied him his First Amendment right to practice his religion in connection with the observation of two Muslim holidays while housed at Fishkill; (2) denied him his due-process rights in connection with a disciplinary proceeding that resulted in his incarceration in the Special Housing Unit ("SHU") at another State correctional facility; and (3) violated his Eighth Amendment rights by ordering his transfer from Fishkill to Upstate Correctional Facility in contravention of a medical directive barring his exposure to extended travel. Plaintiff seeks compensatory and punitive damages from all of the defendants.

      Defendants have moved for summary judgment on each of Plaintiff's four claims. Plaintiff has submitted extensive opposition papers. On April 9, 2012, Magistrate Judge Michael H. Dolinger issued a Report and Recommendation ("R&R") recommending that Defendants' motion for summary judgment be granted. The Court has reviewed the R&R and Plaintiff's

objections.  For the reasons that follow, the Court adopts Magistrate Judge Dolinger's Report and Recommendation in its entirety.  The Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

### I. Facts[1]

Plaintiff asserts four separate claims, each arising from a discrete set of events summarized in turn.

A.  The Zakat-ul-Fitr Free Exercise Claim

Thomas is an observant Muslim.  At the conclusion of Ramadan--a Muslim holiday involving 40 days of fasting and prayer--devout Muslims are to participate in a day of prayer and gift-giving known as "Eid-ul-Fitr."  The gift-giving rite is known as "Zakat-ul-Fitr" or "Sadaqat-ul-Fitr."  This obligation involves an act of charity, typically the provision of money or (more traditionally) food to someone in need, as a means of purifying the giver.  According to the Imam of Fishkill, the performance of this act of charity is permissible either on the day of Eid or prior to it.  In 2007 the Eid occurred on October 13.  Plaintiff alleges that the Zakat-ul-Fitr ceremony in 2007 was improperly held after Ramadan.  He directs his claim at Defendants William Connolly, the facility Superintendent, and Charles Kelly, the Deputy Superintendent of Security.

The Imam of Fishkill believed, in a prison setting, the fulfillment of the Zakat-ul-Fitr obligation would be more readily achieved through the donation of food.  The Imam sent a memorandum to the Assistant Deputy Superintendent for Programs, Mr. George Jessen, discussing how to provide an opportunity for the Ramadan ceremonies and the fulfillment of the

---

[1] The facts in this section are taken from the R&R, unless otherwise noted.

obligation for Zakat-ul-Fitr.  In that memorandum, the Imam anticipated that the Eid prayer would be scheduled for October 11 or 12, one or two days prior to the date of the Eid.

Deputy Superintendent of Security Charles Kelly initially addressed the Zakat-ul-Fitr arrangements.  Kelly opted for an exchange of money rather than the distribution of food. Kelly's decision was based on prison policy which did not permit inmates to carry food items throughout the facility and out of concern that food exchanges could lead to fights or other security threats.[2]

Plaintiff filed a grievance prior to the Eid ceremonies, asking that he be allowed to give the Zakat-ul-Fitr.  That grievance was filed on October 10, 2007, three days before Eid.  In the meantime, Superintendent Connolly modified Deputy Kelly's decision to permit the use of food as a means of fulfilling the charitable acts required of Muslim inmates.  He did so in part because the Imam had agreed to undertake the food distribution, thus alleviating Kelly's concern that the process could lead to security threats within the prison.  Connolly also scheduled the Zakat-ul-Fitr to take place on October 12, one day before Eid.  That distribution did in fact take place as scheduled, with the Imam presiding.

Superintendent Connolly subsequently denied Plaintiff's grievance on November 1, 2007, because the charitable offerings had in fact already been distributed.  Plaintiff appealed that denial, complaining that the distribution was late, but since Eid occurred on October 13 that year, there was nothing in the record to suggest that this complaint had any basis.

---

[2] The Prisoners do not lose their right to exercise their religion while incarcerated; but the prison authorities are not required to turn a blind eye to those who may be using religious observances for other purposes.  See, for example, Patrick T. Dunleavy, The Fertile Soul of Jihad: Terrorism's Prison Connection (Potomac Books 2011) on how prison subcultures use religion to foster radicalization. Of certain individuals.

B.  The Tenth-Day-of-Muharram Free Exercise Claim

Plaintiff's second claim concerns another alleged denial of the opportunity to participate in a required religious observance, this time on the first and last days of the Ten Days of Muharram Festival, on January 10 and 19, 2008.  This claim was made against the following Defendants: Deputy Superintendent Kelly; Assistant Deputy Superintendent of Programs Fedele Fiore; Deputy Superintendent for Programs Roland Larkin; and Corrections Officer Thomas Rough.

The celebration of Muharram involves ten days of fasting, with the final day – involving ceremonies and a breaking of the fast – viewed as the most important.  The procedure for arranging religious observances for Muslim inmates starts with the Imam, who prepares requests for prisoner releases, scheduling and other logistical matters that are needed to ensure that participants are able to carry out their religious obligations.  These logistical matters include preparing a list of inmates who participate and are to be called out from their regular locations to attend services, and transmitting the approved list of inmates to the callout office to include on the master "callout list."  On January 3, 2008, the Imam wrote to Larkin by memorandum, requesting approval for the Ten Days of Muharram Festival.  That same day, Larkin received a Special Events Final Coordination and Approval Package from the Imam.  This submission included a list of inmate participants, approved meals, and program specifics.  Although the Imam's memorandum had listed the pertinent dates as running from January 10 through 19, the packet listed the end date as January 18.

On January 10 there was no callout due to what defendants describe as a scheduling confusion.  It is undisputed, however, that none of the named Defendants was responsible for the

4

submission of the callout list to the facility's callout office.  There is also no dispute that callouts were properly made for the Muharram services on January 11 through January 18, but it is conceded that the events of January 19 did not go according to plan.

The Imam did not correct the dating error from the original packet until as late as January 18.  The Imam sent defendant Fiore a memorandum mentioning that January 19 was to be the last day of the Muharram Festival.  Fiore approved this request, but it apparently remained the Imam's obligation to submit the list of participating inmates to the callout office.

The ten Muslim inmates who had signed up for the ceremony were not included on the prison's callout list for January 19, presumably because their names had not been sent in time to the callout office.  The record does not explicitly disclose why the Muharram prisoner list for that date was not timely sent to the callout office or who was responsible for this error, though it is undisputed that the four Defendants named in this claim were not involved in the transmission of the list to the callout office, since it was the Imam's role to communicate with that office. Officer Rough, who was assigned to the prison mosque to coordinate these events, reports that he received notice late on January 18 that there was to be a last-minute callout the next day for inmates eligible to participate in the Muharram Festival.  In anticipation of a potential problem, Rough had the prison radio make an announcement to officers to the effect that a Muslim festival was to occur and that officers should release the participating inmates.  He also began telephoning various housing units.  Rough was aware that the participating inmates were to receive a special meal on the last day of the festival.  He called the mess hall before 10:00 a.m. to ask that mess trays be sent to the mosque.  The mess hall personnel advised him that because of a lack of advance notice, they would only be able to send regular food.

Despite Rough's efforts, not all listed inmates were released from their usual assignments. While Officer Rough waited at the mosque, one inmate who had signed up for Muharram appeared and reported that no callout for the event had occurred in his unit. That prisoner then left because he had a visit and chose to meet that visitor rather than wait to attend the last day of Muharram. Shortly thereafter, two additional inmates appeared for the service but left when they learned that the special meal that had been requested by the Imam would not be served. At around 10:00 a.m., Plaintiff arrived. When advised of the situation, he became angry and left without waiting for the service.

C. Due-Process in a Disciplinary Proceeding

On March 17, 2008, Plaintiff was removed from the general population at Fishkill and placed in solitary confinement and punitive segregation in the SHU pending an investigation of possible disciplinary violations. In the Misbehavior Report issued on March 20, 2008, the Inspector General's Office recounts that a DOCS Muslim chaplain named Abdul Mubdi had advised that on March 13, 2008, while in a DOCS Harlem office, he received a telephone call from someone purporting to be "Abdul Jabbar," but that he recognized the voice of the caller as that of the Plaintiff.

Mubdi knew that Thomas was confined at Fishkill and that the phone number on his readout was not a prison number. He therefore wrote down the number and ended the call. According to the investigation report, the call had been made through a third-party phone, and Plaintiff's phone log confirmed that he had placed a telephone call at the time that the chaplain received the call in question. Based on these events, the DOCS investigator proffered four charges: (1) communicating by phone with a DOCS employee without authorization, (2) making a third-party phone call, (3) making false statements, and (4) impersonation.

6

Under DOCS regulations, a disciplinary hearing must be conducted within seven days of the inmate's pre-hearing confinement, unless an extension is obtained.  N.Y. Comp. Codes R. & Regs. tit. 7, § 251-5.1(a).  The prison staff applied on March 21, 2008 for an adjournment of the hearing, which was granted.  The hearing took place on the adjourned date of March 25, with Plaintiff pleading not guilty.  At the conclusion of the hearing, the hearing officer, Defendant Stephen Roberts, found Plaintiff guilty on all charges.  He sentenced Plaintiff to six months of keeplock and six months loss of package, commissary, and phone privileges.

Plaintiff appealed his conviction on March 28, 2008.  He asserted a variety of challenges to the manner in which the hearing had been conducted.  He complained that the misbehavior report and hearing were untimely, in violation of DOCS regulations.  Plaintiff also stated that he had requested the appearance of the chaplain as a witness.  Although he subsequently waived that appearance, Plaintiff asserted that the hearing officer had been required, and had failed, to prepare a written statement of refusal.  He also complained that no evidence had been produced at the hearing and, finally, that his sentence was excessively harsh.

While Plaintiff's appeal was pending, DOCS transferred him from Fishkill to the Upstate Correctional Facility ("Upstate") to serve his six-month keeplock sentence, which was set to expire on September 13, 2008.  On May 13, 2008, Norman Bezio, the DOCS Director of Special Housing/Inmate Discipline, reversed the conviction because the original misbehavior report had been based on an investigation, a circumstance that required the hearing officer to call the reporting officer to testify at the hearing.  Bezio declared that since the reporting officer had not appeared at the hearing, the conviction could not stand.  Nonetheless, Plaintiff was held in the

Special Housing Unit ("SHU") for twenty-four days after his conviction was reversed, until June 6, 2008[3] (for a total of almost three months in punitive confinement).

Based on this series of events, Plaintiff asserts a claim against Defendant Roberts, Deputy Superintendent for Administrative Affairs, for his role as hearing officer at Plaintiff's disciplinary hearing. Plaintiff specifically claims that the disciplinary hearing, held eight days after his initial confinement, was untimely, and that he was denied his right to due process because Roberts did not call the chaplain as a witness.

### D. The Eighth Amendment "Deliberate-Indifference" Claim

This claim is based on Plaintiff's transfer to the Upstate Correctional Facility located in Malone, New York, just south of the U.S./Canadian border, to serve his six-month sentence imposed after the March 25, 2008 hearing at the Fishkill facility. Plaintiff documents that he has had severe back problems since at least 2001. In June 2001, Thomas's MRI showed disc protrusions that resulted in "central canal stenosis" with "bilateral neural foraminal stenosis."[4] Plaintiff's treatment included back-pain medication and anti-inflammatory drugs, a back brace, and regular physical therapy. On June 13, 2008, Plaintiff's medical file notes that he was permitted to wear a back brace and that he was exempted for medical reasons from bus and van trips. Subsequent examinations confirmed that this is a chronic condition. Plaintiff claims that in connection with his April 30, 2008 transfer to Upstate, Defendants Elizabeth Ritter,[5] the Fishkill Deputy Superintendent of Health; Joy Albright, the Fishkill Nurse Administrator; and Theresa Knapp-David, the DOCS Associate Commissioner of Population Management, knowingly disregarded a medical hold that limited his travel time to two hours.

---

[3] Plaintiff claims that during the period of his confinement he lost program privileges, the ability to participate in religious services with other prisoners, and access to family visits.

[4] Narrowing of the "invertebral foramina of the lumbar spine caused by an encroachment of bone upon the space." Dorland's Illustrated Medical Dictionary, 1698 (29th ed. 2000).

[5] Plaintiff sues Dr. Ritter as Elizabeth Williams.

Plaintiff further documents the presence of this travel restriction in his medical file for periods preceding and overlapping the time when he was transported by bus to Upstate.[6]  His transfer to Upstate took approximately fourteen hours, during which time Plaintiff claims that he experienced excruciating pain.  Once he arrived at Upstate, he had to be taken to the hospital for treatment of his pain and "mental anguish."[7]  In his deposition, Plaintiff testified that the trip had exacerbated his back condition.

On May 22, 2008, Plaintiff filed a grievance at the Upstate Correctional Facility concerning his April 30, 2008 transfer from Fishkill.  He argued that the transfer had been in violation of a medical hold that was documented in his file.  The Inmate Grievance Resolution Committee ("IGRC") rejected that grievance on June 4, 2008, based on its finding that his medical file contained no such hold.  DOCS conducted a search through the files of the Central Office Review Committee ("CORC") for all grievance appeals to CORC made by Thomas.  That search established that Plaintiff had never filed an appeal to CORC in connection with his May 22 grievance, an omission that demonstrates a fatal failure to exhaust administrative remedies.

## II. Rule 56 Standards

Summary judgment may be granted if there is no genuine dispute as to the material facts, and based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c).  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law . . .' [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Shade v. Hous. Auth. of New Haven, 251 F.3d 307, 314 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The responsibility of the court in deciding a summary

---

[6] Magistrate Judge Dolinger notes that this documentation contradicts the finding of the IGRC that no such medical hold could be found.  See Reznik Decl. Ex. C.
[7] No records of this medical visit are provided.

judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).

The party moving for summary judgment bears the initial burden of demonstrating an "absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy his initial burden by demonstrating an absence of evidence in support of an essential element of the non-moving party's claim. See, e.g., id. at 322-23. The nonmoving party facing a movant who has carried its burden must demonstrate a genuine issue of material fact on any such challenged element on its claim. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (Holding that nonmoving party must do more than simply indicate some "metaphysical doubt as to the material facts."). Rather, the nonmoving party must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. See, e.g., Celotex, 477 U.S. at 324.

III.     Magistrate Judge Dolinger's R&R

Magistrate Judge Dolinger concluded that the undisputed facts demonstrate that Plaintiff cannot sustain his burden on either of his First Amendment claims. (R&R 31.)

A. The Merits of Plaintiff's Free-Exercise Claims

a.  *Free-Exercise Standards in a Prison Setting*

Inmates are entitled to practice religion and must be offered "reasonable opportunities" by the authorities to do so. See, e.g., Hudson v. Palmer, 468 U.S. 517, 523 (1984) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972) (per curiam)). To establish a free-exercise claim, an incarcerated plaintiff must demonstrate that the targeted policy or practices constitute a burden

10

on his religious beliefs. See Pugh v. Goord, 571 F.Supp.2d. 477, 497 (S.D.N.Y. 2008).  Prison

officials must justify restrictions on prisoner's observances by demonstrating that the restrictions

are "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482

U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

     Magistrate Judge Dolinger applied the "substantial burden" standard enumerated by the

Second Circuit in Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006) (Requiring plaintiff

to establish that the disputed conduct "substantially burdens his sincerely held religious

beliefs.").  A substantial burden arises when "the state 'put[s] substantial pressure on an adherent

to modify his behavior and to violate his beliefs.'" Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir.

1996) (quoting Thomas v. Review Bd. Of the Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)).

     Once a plaintiff establishes the substantial burden, the court evaluates the reasonableness

of the challenged act or policy under a four-factor test.  This test looks to:

> (1) whether the challenged regulation or official action has a valid, rational
> connection to a legitimate governmental objective; (2) whether prisoners have
> alternative means of exercising the burdened right; (3) the impact on guards,
> inmates and prison resources of accommodating the right; and (4) the existence
> of alternative means of facilitating exercise of the right that have only a de
> minimis adverse effect on valid penological interests.

 Salahuddin, 467 F.3d at 274 (citing Turner, 482 U.S. at 90-91).  The defendant must prove the

first factor: that the challenged action or policy bears a rational connection to a legitimate

government objective, and that this objective motivated the challenged conduct.  Lastly,

Magistrate Judge Dolinger noted that if the conduct at issue involves an isolated departure from

otherwise proper procedures, the court will not find that it imposed a severe burden on the

inmate's religious exercise. See,  e.g., Ford v. McGinnis, 352 F.3d 582, 594 (2d Cir. 2003).

11

b.  *The Zakat-ul-Fitr Claim*

Magistrate Judge Dolinger concluded that plaintiff's first claim, regarding Defendants Kelly and Connolly's alleged interference with Plaintiff's right to the free exercise of religion in connection with Zakat-ul-Fitr ceremonies, is baseless. (R&R 40.)  Specifically, Magistrate Judge Dolinger found "[t]he prison made reasonable accommodations for the Muslim inmates to perform their Zakat-ul-Fitr obligations, and it cannot be said that those accommodations substantially burdened the plaintiff's exercise of his right to practice his religion." Id.  Magistrate Judge Dolinger went on to hold that "[plaintiff] fails to show that the way in which the matter was handled contravened the precepts of his religion or substantially burdened his exercise of his religious obligations, much less show that this one event reflects a policy or practice of the institution to violate his First Amendment Rights."  Id.

Magistrate Judge Dolinger acknowledged that Thomas may intend to argue that the conclusion of Ramadan fell earlier than October 13, the date specified by the Imam.  Id. at 41.  Magistrate Judge Dolinger determined, however, that the facility personnel were entitled to rely on the Imam's representation that October 13, 2007 was the correct date.  Id.  Given these conclusions, Magistrate Judge Dolinger declined to address Defendants' alternative argument that they were protected by qualified immunity. Id.

c.  *The Muharram Claim*

Magistrate Judge Dolinger concluded summary judgment should be granted for defendants on the Muharram claim. (R&R 50.)  Magistrate Judge Dolinger found Plaintiff's claim fails for at least two reasons.  Id.  First, Magistrate Judge Dolinger determined that the events were not part of a policy or practice at Fishkill facility to deny Muslim inmates their right

to practice their religion. Id. The possible failure to call out inmates on January 10, 2008 and the errors that led to a failure of the prison's efforts to hold a final-day celebration were logistical and clerical errors. They were not intended to restrict Plaintiff's Constitutional right to exercise his religion. Indeed, but for the administrative error, there would have been complete access to the services being sought. Second, Magistrate Judge Dolinger determined that Plaintiff offers no basis for concluding the named Defendants were personally responsible for the alleged errors. Id. at 51. Plaintiff bears this burden because government employees may not be held liable under Section 1983 unless they can be shown to have participated in a violation of Plaintiff's constitutional rights. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Magistrate Judge Dolinger held that there was no evidence in the record suggesting that any Defendant was responsible for the failure to call out the inmates. (R&R 51-52.) Moreover, there was no link between the Defendants and the apparent problems organizing the last day of the festival. Id. at 52.

    B. The Due-Process Claim

Plaintiff claims Deputy Superintendent Roberts deprived him of his due-process rights during his disciplinary hearing. (R&R 57.) To succeed on this claim, plaintiff must show: " '(1) that he possessed a liberty interest; and (2) that the defendant(s) deprived him of that interest as a result of insufficient process.' " Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (quoting Giano v. Selsky, 37 F.Supp.2d 162, 167 (N.D.N.Y. 1999)). A prisoner's liberty interest is implicated by SHU confinement only if the discipline "'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Palmer, 364 F.3d at 64 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Pursuant to Sandin and Palmer, a court must look to the actual punishment in making its determination. Palmer, 364 F.3d at 64 (citing Scott v. Albury, 156 F.3d 283, 287 (2d Cir. 1998)). Accordingly, Magistrate Judge

Dolinger looked to whether the manner in which the disciplinary hearing was conducted failed to meet due-process standards.  Id. at 59.  As a result, Magistrate Judge Dolinger found Plaintiff's due-process claim to be meritless.  Id. at 64.

In arriving at this conclusion, Magistrate Judge Dolinger assessed the criticisms that Plaintiff included in his complaint.  Plaintiff alleged the hearing was delayed improperly and Defendant Roberts failed to call the chaplain or explain his reasons for not doing so.  Id. at 59.  Magistrate Judge Dolinger found the timeliness argument to be meritless because the requirements governing the timing of the hearing are functions of state agency regulation, in this case DOCS.  Id. at 60.  As such, Magistrate Judge Dolinger found that "[e]ven if the hearing officer had violated a DOCS procedural requirement, that would not, in itself, trigger a due-process violation." Id.  Moreover, the record does not reflect a state-law violation.  Id.  Magistrate Judge Dolinger notes that the prison was granted an extension for the hearing from March 21 to 25 and that the proceeding took place on March 25.  Id.

Magistrate Judge Dolinger then addressed Plaintiff's complaint that he was denied a witness at the hearing.  The Supreme Court has noted that "[c]hief among the due process minima outlined in Wolff v. McDonnell, 418 U.S. 539 (1974) was the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." Ponte v. Real, 471 U.S. 491, 495 (1985).  Magistrate Judge Dolinger concluded that Plaintiff's claim regarding the denial of a witness plainly fails because, although the Plaintiff initially requested the appearance of the chaplain, he subsequently waived the appearance. (R&R 63.) An inmate's waiver of a request for a witness leaves the hearing officer with no obligation to call the witness.  Id.  at 64.  Defendant Roberts asserts that if Plaintiff has not waived the chaplain's appearance, he would have honored that request.

14

Plaintiff articulated two further attacks on the hearing officer's conduct.  Magistrate Judge Dolinger addressed these allegations despite Plaintiff's failure to plead them.  Id. at 64. The first claim is that the hearing officer failed to explain his decision.  Magistrate Judge Dolinger rejected this claim based on the statement by the hearing officer included on the hearing disposition sheet.  Id. at 65.  The hearing officer explicitly invoked the findings of the investigators and explained the severity of the punishment that he imposed.  Id.  Furthermore, the Supreme Court has consistently held that prison officials must be accorded the discretion necessary to keep a hearing within reasonable limits and to refuse to call witnesses when summoning them may create a risk of reprisal or undermine authority.  Wolff, 418 U.S. at 566 ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.").  (R&R 62). Plaintiff's remaining due-process complaint is that the hearing officer's decision was not supported by any evidence.  Id.  Magistrate Judge Dolinger found this claim to be groundless due to the hearing officer's reliance on the report of the investigative officer.  Id. at 66. Magistrate Judge Dolinger recognized that the report was admissible and sufficient for the purpose of a prison disciplinary hearing.  Id.

C.  The Eighth Amendment/Deliberate Indifference Claim

a.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") prohibits a prisoner from bringing a prison-condition claim under 42 U.S.C § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a).  The PLRA requires "proper exhaustion," which the Supreme Court has characterized as " 'using all the steps that the agency holds out, and doing so

properly.' " Woodford v. Ngo, 548 U.S. 81, 90 (2006) (emphasis in original) (quoting Pozo v.

McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).  Of particular note, "an untimely or

otherwise procedurally defective" use of the grievance procedure does not satisfy the exhaustion

requirement.  Woodford, 548 U.S. at 83-84.  The defense of failure to exhaust is treated as an

affirmative defense, and therefore defendants must prove its factual basis.  Jones v. Bock, 549

U.S. 199, 219 (2007).

The Second Circuit has recognized three exceptions to the PLRA's exhaustion

requirements.  A prisoner may proceed with a prison-conditions claim even where he has not

exhausted his administrative remedies if:

> (1) administrative remedies are not available to the prisoner; (2) defendants have
> either waived the defense of failure to exhaust or acted in such a way as to estop
> them from raising the defense; or (3) special circumstances, such as a reasonable
> misunderstanding of the grievance procedures, justify the prisoner's failure to
> comply with the exhaustion requirement.

Ruggiero v. Cnty. Of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Hemphill v. New York,

380 F.3d 680, 686 (2d Cir. 2004)).

### b. Assessing Defendants' Exhaustion Defense

Magistrate Judge Dolinger found that Plaintiff's deliberate-indifference claim is barred

by Plaintiff's failure to exhaust his administrative remedies.  (R&R 30.)  Thomas argues that his

appeal of the May 22 grievance was somehow consolidated with the appeal of one of his earlier

grievances, or else that his appeal of that earlier grievance excuses him from appealing the

grievance filed at Upstate.  Id. at 21.   Magistrate Judge Dolinger rejected both arguments,

finding that Plaintiff's arguments did not create a triable dispute regarding whether he satisfied

the exhaustion requirement for his deliberate-indifference claim.  Id. at 24.  Moreover, Thomas

presented no evidence of the alleged consolidation of his appeals.  Id. at 25.  "He offers no

evidence at all that CORC consolidated two grievances or even considered the challenge that he had made in his May 22 grievance when it upheld the rejection of his earlier, April 4 grievance." (R&R 24).

Plaintiff also attempts to invoke one of the exceptions to complete exhaustion recognized by the Second Circuit in Hemphill v. New York, 380 F.3d at 686.  Magistrate Judge Dolinger rejected Thomas' argument that the full extent of grievance procedures was not available to him due to IGRC's alleged failure to notify Plaintiff of their decision rejecting his transfer grievance. (R&R 28-29.)  Magistrate Judge Dolinger found this argument to be legally insufficient because DOCS regulations specify a deadline for IGRC to decide a grievance and provide that if the IGRC fails to respond within the time limits, the inmate may move to the next stage of the grievance process.  Id. at 29 (citing N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2)).  Given this provision, courts have consistently held that a failure by the IGRC to respond does not excuse inmates from pursuing all further stages of the grievance process. See, e.g., Pacheco v. Drown, 2010 WL 144400, at *19 (N.D.N.Y. Jan. 11, 2010).  As a result, summary judgment on the exhaustion defense is proper.  Id. at 27.

### c.   Analysis of Eighth Amendment/Deliberate Indifference Claim

Magistrate Judge Dolinger addressed the merits of Plaintiff's underlying deliberate indifference claim should the District Court ignore or excuse Plaintiff's failure to exhaust. (R&R 67.)  Magistrate Judge Dolinger concluded that even if Plaintiff had properly exhausted this claim, it would fail with respect to Defendants Elizabeth Ritter and Theresa Knapp-David, but would survive summary judgment with respect to defendant Joy Albright.  Id. at 68.

i.   Standard of Review

An inmate plaintiff must demonstrate " 'deliberate indifference to [his] serious medical needs' " to establish a constitutional claim for denial of rights based on the medical care provided by the defendants.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (alteration in original) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  In addition, the physical condition of the plaintiff must be sufficiently serious[8] and the failure to render proper care must result from "a sufficiently culpable state of mind."  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  This two-part test contains both an objective and a subjective component.  (R&R 68.).  Proof of an individual defendant's involvement in the alleged violation is a prerequisite to finding liability on a claim for damages brought under section 1983.  Id. at 70-71.  This may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of the inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).

ii.   Discussion

Resolving all ambiguities in favor of the Plaintiff, Magistrate Judge Dolinger found that a factfinder could consider the severe pain that Plaintiff experienced during his transfer to Upstate

---

[8] The Second Circuit has defined a serious medical condition as a situation in which " 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' " Chance v. Armstrong, 143 F.3d 698-702 (2d Cir. 1998) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (internal quotation marks omitted).  More recently, the deprivation has been described as " 'sufficiently serious'" that is, " ' one that may produce death, degeneration, or extreme pain.' " Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998)).

to rise to the level of a "serious medical need."  (R&R 75-79.)  Magistrate Judge Dolinger then assessed the subjective component of the deliberate-indifference test through a separate analysis of the three Defendants' involvement in the events.

### 1.  Albright

For summary judgment purposes, Magistrate Judge Dolinger assumed that Thomas had a medical hold restricting his travel time to two hours in place on the date that he was transferred Upstate.  (R&R 82.)  Based on Plaintiff's assertions, Magistrate Judge Dolinger determined "a trier of fact could find that [Albright, as Nurse Administrator at Fishkill] reviewed, and therefore had knowledge of, Plaintiff's medical history, including his operative medical hold, at the time of his transfer."  Id. at 85.  Moreover, Magistrate Judge Dolinger found "Defendants have not met their initial burden of affirmatively demonstrating the lack of a genuine issue of fact with respect to Albright's involvement in the transfer decision." Id. at 86.[9]  As such, Magistrate Judge Dolinger concluded "that triable issues of fact remain that preclude summary judgment on plaintiff's Eighth Amendment claim against Albright." Id.

### 2.  David and Ritter

Magistrate Judge Dolinger found Plaintiff did not offer facts sufficient to raise a triable issue with respect to defendants David and Ritter's involvement in the decision to transfer plaintiff Upstate.  (R&R 86-87.).

Although Ritter does not recall whether she spoke with Plaintiff regarding his transfer or the existence of a medical hold, she was not his direct health care provider or nurse and thus was not responsible for his direct care.  Plaintiff submits no evidence to the contrary, and therefore

---

[9] "On behalf of Albright, Defendants (1) submit no affidavit or declaration; (2) do not assert any undisputed facts; and (3) do not make any specific arguments concerning her involvement, or lack thereof, in Plaintiff's transfer to Upstate, or her state of mind when she participated in that decision."  (R&R 85-86).

fails to raise any facts suggesting that Ritter personally acted with deliberate indifference in relation to his transfer to Upstate.

David states that she personally reviewed Plaintiff's transfer record, and based upon her review, Plaintiff was approved for transfer to Upstate because of his "unsuitable behavior."  As such, David cannot be said to have known or disregarded any medical condition or limitation of Plaintiff's when that information, if applicable, was absent from the official transfer review records that Fishkill had provided.  Therefore, Magistrate Judge Dolinger found that Plaintiff failed to raise a triable issue regarding David's personal involvement in Plaintiff's transfer to Upstate.

### D.   The Official-Capacity Issue

Plaintiff asserts claims against each of the Defendants in both their individual and their official capacities.  (R&R 90.)  A suit against a government official in his official capacity is essentially a suit against the State and is barred by Eleventh Amendment immunity unless waived by Congress.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989).  As a result, Magistrate Judge Dolinger states that Plaintiff's official-capacity claims are barred by the Eleventh Amendment.  (R&R 91.)

### DISCUSSION

### I. Standard of Review for a Report and Recommendation

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  When the parties make timely objections to the recommendations of the magistrate judge, the court must review the contested portions de novo.  Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998).  The court,

however, "may adopt those portions of the [R&R] to which no objections have been made and which are not facially erroneous."  La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000).

## II. Thomas' Objections

Thomas raises five objections to Magistrate Judge Dolinger's R&R.  Thomas first objects to Magistrate Judge Dolinger's conclusion that Plaintiff failed to exhaust with respect to his deliberate-indifference claims.  Plaintiff contends that his April 4, 2008 consolidated grievances mention the medical department and the department's efforts to change his medical status to allow for his transfer Upstate.  Id.  Plaintiff argues that because he exhausted his April 4, 2008 grievances through multiple levels of appeal, the failure to exhaust defense should not be applied in the present case. Id. at 5.  Magistrate Judge Dolinger specifically rejected this argument when he noted:

> the essence of plaintiff's second grievance concerned the specifics of his being compelled to travel fourteen hours, in violation of that asserted hold, a circumstance never presented in connection with the earlier grievance.  Moreover, plaintiff obviously understood that distinction since he chose to file the May 22 grievance rather than rest on his allegations from the earlier grievance, the appeal of which was still pending as of May 22.

(R&R 26.)  Plaintiff's exhaustion of the April 4, 2008 grievance does not prevent the court from dismissing his claim for failure to exhaust his May 22, 2008 grievance.

Plaintiff further objects to the conclusion that he did not exhaust his administrative remedies with respect to his May 22, 2008 grievance.  Thomas alleges that the two memoranda he received from the Upstate IGRC misled him and estopped him from appealing his May 22 grievance.  Magistrate Judge Dolinger addressed this argument and found it to be legally insufficient.  (R&R 29.)  DOCS regulations stipulate a deadline for the IGRC to decide a grievance and provide that if the IGRC fails to respond within the time limit, the inmate may

move on to the next stage of the grievance process. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2).  Courts have consistently held that the IGRC's failure to provide a timely response does not excuse the inmate from pursuing all further stages of the process.  See, e.g., Pacheco v. Drown, 2010 WL 144400, at *19 & n.21 (N.D.N.Y. Jan. 11, 2010); see also Banks v. Stewart, No. 08-cv-7463, 2010 WL 2697075 at *8 (S.D.N.Y. 2009).  Therefore, this Court finds proper Magistrate Judge Dolinger's decision that Thomas's deliberate-indifference claim is barred by his failure to exhaust his administrative remedies.

Second, Plaintiff objects to Magistrate Judge Dolinger's conclusion that Thomas cannot sustain his free exercise claims.  He repeats his allegations with respect to the Zakat-ul-Fitr claim.  Specifically, Thomas argues that defendant Kelly had malicious intentions, that there was no legitimate governmental interest, that the adverse effect was not de minimis, and that there were no valid penological interests.  Id. at 12-13.  Thomas directs the court to Ford v. McGinnis for support.  352 F.3d 582 (2d Cir. 2003).   In Ford, the court noted the circuit split as to the applicability of the "substantial-burden," but applied the test absent briefing by parties as to its continuing viability.  Id.  Magistrate Judge Dolinger applies the "substantial-burden" test utilized in Ford to the present case.  (R&R 33.)  Thomas offers no argument to establish a substantial burden on his religious beliefs.  The prison made reasonable accommodations for the Muslim inmates to satisfy their Zakat-ul-Fitr obligations, and it cannot be said that those accommodations substantially burdened the Plaintiff's exercise of his right to practice his religion.  Accordingly, Thomas' objection is without merit.

Plaintiff also objects to Magistrate Judge Dolinger's denial of the Muharram claim. Thomas does not offer an argument for this objection; instead, he instructs the court to look at the facts and exhibits he has already offered and insists that they show a clear violation of his

constitutional rights.  Once again, Plaintiff urges the court to follow Ford, and alleges that the Defendants acted with intentional malice.  Id. at 17-18.  Thomas does not establish that the events were part of a policy or practice at the Fishkill facility to deny Muslim inmates their right to practice their religion, nor does he offer a basis for a trier of fact to conclude that any of the named Defendants were personally responsible for the alleged errors.  The possible failure to call out inmates on January 10, 2008 and the errors that led to a failure of the prison's efforts to hold a final-day celebration cannot form a predicate for liability on the part of any of the Defendants. The errors were of a logistical and clerical nature, not intentional, and isolated.  Second, apart from the isolated nature of the events that Plaintiff targets, his claim fails because he offers no basis for a trier of fact to conclude that any of the named Defendants were personally responsible for the alleged errors.  That is Plaintiff's burden, since a government employee may not be held liable under section 1983 unless he can be shown to have participated in a violation of a Plaintiff's constitutional rights.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1945-46 (2009). Accordingly, Magistrate Judge Dolinger's finding is accurate and Plaintiff's claim fails.

Third, Plaintiff objects to Magistrate Judge Dolinger's analysis of the due process claim. In particular, Plaintiff contends that DOCS did not present any evidence of the third-party call. Magistrate Judge Dolinger, however, highlighted that the hearing officer relied on the report of the investigative officer, a report that included the investigative officer's findings from an interview with the chaplain whom Plaintiff had telephoned.  (R&R 65-66.)  That report was admissible and sufficient for purposes of a prison disciplinary hearing, since the inmate does not have a right of confrontation, and hearsay evidence is permitted.  See, e.g., Baxter v. Palmigiano, 425 U.S. 308, 322-323 (1976).  Accordingly, Thomas' objection is without merit.

Thomas raises another objection to Magistrate Judge Dolinger's determination regarding the due process claim; he objects based on the alleged atypical and significant hardship he suffered. Thomas requests the court to view the facts, supporting documents, and exhibits in the record to support this objection. Plaintiff must establish that the state regulations impose certain substantive predicates to punishment in order to trigger due-process protections. See, e.g., Sealey v. Giltner, 197 F.3d 578, 584 (2d Cir. 1999) (explaining that substantive-predicate analysis was limited to instances where a finding of such a predicate results in confinement to conditions of significant hardship and atypicality). Accordingly, Magistrate Judge Dolinger examined whether the manner in which the hearing was conducted failed to meet due-process standards. (R&R 59.) Magistrate Judge Dolinger concluded that the hearing was proper and Plaintiff's due-process complaint was groundless. Id. at 60-66. The Court agrees.

Fourth, Plaintiff objects to Magistrate Judge Dolinger's recognition of Defendants' qualified immunity and Eleventh Amendment immunity. Plaintiff does not offer an argument as to why qualified immunity and Eleventh Amendment immunity should not apply. Magistrate Judge Dolinger's application of both immunities is correct and Plaintiff's objection is meritless.

Finally, Plaintiff objects to Magistrate Judge Dolinger's assessment of Defendant Ritter's involvement in the events surrounding the deliberate indifference claim. Plaintiff repeats his assertions in the record. Specifically, that Thomas and defendant Ritter knew each other personally and that she knew of his medical hold. This Court finds that Magistrate Judge Dolinger's conclusion that Ritter was not Plaintiff's direct health care provider or nurse and thus was not responsible for his direct care is correct. (R&R 87.) Accordingly, Thomas' objection is without merit.

## CONCLUSION

For the foregoing reasons, the court accepts adopts Magistrate Judge Dolinger's Report and Recommendation in its entirety. Defendants' motion for summary judgment is GRANTED and the case is DISMISSED. Pursuant to 28 U.S.C. § 1915(a), an appeal would not be in good faith. The Clerk of Court is directed to enter judgment accordingly.

Dated: New York, New York
      August 30, 2012

SO ORDERED

PAUL A. CROTTY
United States District Judge

Copies to:

Mr. Bernard Thomas
#99-A-2204
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, New York 12788-1000

Inna Reznik, Esq.
Assistant Attorney General
   for the State of New York
120 Broadway, 24th Floor
New York, New York 10271

25